# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

## No. ACM 40444

_____

### UNITED STATES
*Appellee*

v.

### Maliek L. CASSABERRY-FOLKS
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 22 November 2024

_____

*Military Judge*: Christina M. Jimenez (arraignment); Brett A. Landry.

*Sentence*: Sentence adjudged 24 February 2022 by GCM convened at Travis Air Force Base, California. Sentence entered by military judge on 13 July 2022: Bad-conduct discharge, confinement for 18 months, reduction to E-1, forfeiture of all pay and allowances, and a reprimand.

*For Appellant*: Major David L. Bosner, USAF; Captain Michael J. Bruzik, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, GRUEN, and WARREN, *Appellate Military Judges*.

Judge WARREN delivered the opinion of the court, in which Judge GRUEN joined. Chief Judge JOHNSON filed a separate opinion concurring in part and in the judgment.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

WARREN, Judge:

At a general court-martial, a military judge convicted Appellant, consistent with his pleas and pursuant to a plea agreement, of one specification of assault consummated by a battery against his fellow Airman and then-girlfriend, GCC;[1] one specification of extortion against the same GCC (his ex-girlfriend at the time of the offense); one specification of assault consummated by a battery against a security forces non-commissioned officer,[2] two related but separate specifications of assault consummated by a battery against different law enforcement personnel in execution of their duties; one specification of larceny by wrongfully withholding property; one specification of forgery; one specification of absence without leave; one specification of wrongful use of a controlled substance; and one specification of violating a lawful general regulation on divers occasions (to wit: Department of Defense Instruction (DoDI) 5154.31, Vol. 4, *Commercial Travel Management: DoD Government Travel Charge Card Program*), in violation of Articles 128, 127, 121, 105, 86, 112a, and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 927, 921, 905, 886, 912a, 992, respectively.[3,4]

---

[1] Appellant was originally charged with the offense of abusive sexual contact in violation of Article 120(d), UCMJ, 10 U.S.C. § 920(d), for this same misconduct. However, Appellant and the convening authority agreed in the plea agreement that Appellant would instead plead guilty to the same misconduct as an Article 128, UCMJ, battery offense. The parties at trial agreed with the military judge that, under the circumstances, the plea agreement functioned as the "constructive referral" of that Article 128, UCMJ, charge and specification. *See United States v. Wilkins*, 29 M.J. 421, 424 (C.M.A. 1990).

[2] This was a lesser included offense of the charged offense of assault consummated by a battery upon a person in the execution of military law enforcement duties in violation of Article 128, UCMJ. *See Manual for Courts-Martial*, *United States* (2019 ed.) (2019 *MCM*), pt. IV, ¶ 77.b.(3)(b) (categorizing assault upon "a person in the execution of law enforcement duties" as a category of assaults "permitting increased punishment based on [the] status of [the] victim"); *see also* 2019 *MCM*, pt. IV ¶ 3.b(2)(b) (classifying offenses where "[a]ll of the elements of the lesser offense are included in the greater offense, but at least one element is a subset by being legally less serious" as necessarily included offenses).

[3] Based upon the dates of the underlying misconduct and referral of charges, all references in this opinion to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and Rules for Courts-Martial are to the 2019 *MCM*.

[4] A total of nine charges consisting of 11 specifications were referred against Appellant. Pursuant to the plea agreement, the Government did not seek to prove up the greater offenses where Appellant pleaded guilty to a lesser included offense (as indicated in

The military judge sentenced Appellant, within the agreed-upon sentencing parameters of Appellant's plea agreement, to a bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The military judge awarded Appellant day-for-day credit for each of the 293 days Appellant spent in pretrial confinement pending trial. In his clemency submission, Appellant requested suspension, remission, or reduction of his reduction in grade; in the alternative, Appellant requested a deferment of his reduction in grade and of his adjudged forfeitures of all pay and allowances. The convening authority took no action on the findings or sentence, thereby denying Appellant's request for suspension, remission, or reduction of his reduction in grade. The convening authority denied Appellant's alternative request to defer his reduction in grade and total forfeitures.

Appellant raises four issues on appeal, which we have reworded and reordered: (1) whether the Government violated Appellant's Article 10, UCMJ, 10 U.S.C. § 810, speedy trial rights;[5] (2) whether the military judge erred by failing to award Appellant with greater pretrial confinement credit based on the oppressive circumstances he endured while at a civilian prison facility despite the availability of a military facility in which he could be confined; (3) whether Appellant was denied speedy post-trial processing due to the excessive delay in the Government's production of the record of trial (ROT); and (4) whether missing portions of the ROT require remand for correction. Finally, given that this opinion is ultimately being issued roughly 19 months following its docketing with this court, we *sua sponte* specify a fifth and final issue: (5) whether Appellant was denied speedy post-trial processing due to excessive delay related to the time between docketing and the issuance of this court's opinion.

As to issue (1), we find this issue was affirmatively waived by Appellant's failure to raise this motion prior to arraignment and subsequent unconditional guilty plea. *See United States v. Lee*, 73 M.J. 166, 170–71 (C.A.A.F. 2014) (citations omitted) (discussing "the narrow limitation for litigated speedy trial motions alleging a violation of Article 10, UCMJ, 10 U.S.C. § 810 (2012)"); *see*

---

notes 1 and 2, *supra*). In addition, the convening authority dismissed the remaining charges and specifications with prejudice after the announcement of sentence for the offenses to which Appellant pleaded guilty.

[5] We note that Appellant's brief has two different formulations of this issue. In the listing of his formal assignments of error, he articulated the issue statement as reflected in the summarized version preceding this footnote. However, in the body of his brief, he reconstrued this issue as a request for sentencing relief: "Senior Airman Cassaberry-Folks was entitled to sentencing relief under the doctrine of speedy trial due to the [G]overnment's failure to bring him to trial until 298 days after his placement in pretrial confinement."

*also United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (holding allegations of Article 10, UCMJ, violations not litigated prior to arraignment are waived on appeal where there has been an unconditional guilty plea). We note Appellant lodged a demand for speedy trial—which we interpret to mean that both he and his trial defense counsel were attuned to this issue.[6] We further note that Appellant has not raised any claim of ineffective assistance of counsel against his trial defense counsel for not litigating an Article 10, UCMJ, motion at trial, which we interpret to mean that trial defense counsel's decision not to raise the motion was no oversight, but intentional. Under these circumstances, where trial defense counsel were aware of the issue, and also aware that speedy trial motions were not foreclosed by the plea agreement, and yet failed to raise one, we hold that the failure to raise this motion after the military judge specifically called upon the Defense to enter any further motions prior to pleas, constitutes a knowing and voluntary waiver. *Cf. United States v. Davis*, 79 M.J. 329, 331–32 (C.A.A.F. 2019) (holding that counsel declining to raise an objection in the face of a specific military judge invitation to raise a motion is waiver).[7]

As to issue (4), we conclude this issue was resolved when the Government submitted, and this court granted, a motion to attach portions of the ROT not

---

[6] Here we pause to note that a demand for a speedy trial is not the same as a motion to dismiss based upon deprivation of a speedy trial. Appellant only raised the former, lodging a demand for a speedy trial on 11 June 2021. While Appellant asserts that his demand for speedy trial alone preserved the issue, we disagree.

[7] While we retain waiver-piercing authority on this issue insofar as the charged misconduct in this case predates the 2021 amendments to Article 66, UCMJ, 10 U.S.C. § 866, which removed that authority, we decline to exercise that power in this case. *See* William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (FY21 NDAA), Pub. L. No. 116-283, § 542(b)(1), 134 Stat. 3388, 3611–12 (2021) (removing the words "should be approved" from our factual sufficiency review authority). Our superior court has explained that under the version of Article 66, UCMJ, applicable to Appellant's case, we have an obligation to review the entire record and the authority to "leave [Appellant's] waiver intact or to correct the error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted). Having carefully reviewed the record in Appellant's case, we stand by our repeated admonition that "we will only ignore waiver in the most deserving cases." *United States v. Blanks*, No. ACM 38891, 2017 CCA LEXIS 186, at *22 n.11 (A.F. Ct. Crim. App. 17 Mar. 2017) (unpub. op.) (holding that "[a]ppellant affirmatively waived this issue when he conceded, on the record, that the military judge should grant the Government's challenges for cause").

Finally, even if were we inclined to pierce waiver, for the reasons set forth in Chief Judge Johnson's concurring opinion, we would find no prejudicial plain error under Article 10, UCMJ, in Appellant's pretrial delay.

included in the original and copies of the record forwarded to this court and the parties.[8]

As to issue (5), consistent with the analysis set forth in Part II.B of this opinion, we conclude that Appellant suffered no prejudice as a result of post-trial delay stemming from the time of docketing to the time of issuance of this court's opinion. We find only the length of delay (approximately one month over the 18 months) bears in Appellant's favor here, while the reasons for delay and lack of any speedy post-trial processing demand weighing against him. Ultimately, considering the four factors outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972)—referred to as the *Barker* factors, as part of the *Moreno* analysis provided by our superior court in *United States v. Moreno*, 63 M.J. 129, 136 (C.A.A.F. 2006)—we find no due process violation on these grounds and conclude that no relief is appropriate.

As to issue (2), we conclude the military judge erred in denying Appellant's request for additional confinement credit pursuant to Article 13, UCMJ, 10 U.S.C. § 813, based upon the unduly rigorous nature of Appellant's pretrial confinement conditions. As to issue (3), we conclude that the excessive post-trial delay between sentencing in Appellant's case and docketing of his case with this court warrants sentencing relief because of the demonstrable gross indifference exemplified by that delay. Accordingly, in our decretal paragraph we take action to modify Appellant's sentence to provide meaningful and proportionate relief for these errors.

# I. BACKGROUND

Appellant joined the Air Force in December 2016. He was assigned to Travis Air Force Base (AFB), California, for his first assignment. His initial four years on active duty were uneventful. However, Appellant began his slide into misconduct between July and August 2020, when he sold a deployed Airman's car under false pretenses and kept the proceeds. Around this time, he

---

[8] Appellant's brief listed the following missing documents: (1) preliminary hearing audio; (2) the attachment to the military judge's ruling (Appellate Exhibit (App. Ex.) X) on Appellant's motion for relief for alleged Article 13, UCMJ, 10 U.S.C. § 813, violations created by the conditions of his pretrial confinement; and (3) three missing attachments to the first indorsement of the charge sheet. The Government submitted those documents via a motion to attach on 1 July 2024, and this court granted that motion on 12 July 2024. We find the Government's actions resolved this issue. First, the preliminary hearing audio is only an attachment to the record for appellate review and not part of the record per se. *See* Rule for Courts-Martial (R.C.M.) 1112(b). Second, reviewing the missing part of App. Ex. X demonstrates that the omission from the certified record is harmless. Finally, the attachments to the first indorsement to the charge sheet, unlike the charge sheet itself, are not required elements of the ROT. *See id.*

also began recurrently misusing his government travel card (GTC) for personal expenses, which included paying for dates with his girlfriend—a relationship which accounts for Appellant's most serious misconduct. Appellant began a dating relationship of several months with his fellow Airman, GCC. The relationship began to unravel in November 2020 and ultimately dissolved in December 2020. During their brief dating history, Appellant committed a sexual battery against GCC in November 2020 while she was drunk at a friend's house, precipitating the end of their relationship one month later. What followed in the next five-and-a-half months was a string of recurrent misconduct culminating in Appellant's pretrial confinement.

Turning to the convicted misconduct in this case, we briefly summarize the specifications arranged in chronological order.

First, between 27 July 2020 and 22 November 2020, Appellant charged a total of $10,067.56 on his GTC for personal expenses unrelated to any official duties or travel. Second, on or about 26 August 2020, Appellant effected the unlawful sale of a fellow Airman's car entrusted to Appellant for safekeeping while that Airman was deployed. Appellant forged the deployed Airman's signature on a bill of sale and retained the proceeds from the sale, approximately $7,000, for his own use. Third, on or about 30 November 2020, Appellant committed a battery against GCC by touching her buttocks with force with his penis while she was bent over a toilet and vomiting.[9] Fourth, on or about 28 January 2021, after his relationship with GCC ended, Appellant engaged in sextortion against GCC by threatening to publish to their squadron mates and enlisted leadership intimate photos and videos GCC sent him during the course of their dating relationship, unless she complied with his demands. Appellant demanded that she send him $500.00, return all gifts he had given her during their dating relationship, and send him additional intimate photos of herself. Fifth, between on or about 1 April 2021 and on or about 7 May 2021, Appellant wrongfully used marijuana. Sixth, between 4 and 6 May 2021, Appellant absented himself from his place of duty without authority while lying to his unit about his whereabouts by claiming he was going for a COVID-19 vaccination. Ultimately, Appellant's squadron leadership apprehended him when they found him intoxicated in the living room of his off-base apartment during a health and welfare check. This absence without leave was the tipping point for Appellant's command, prompting his squadron commander to order Appellant into pretrial confinement on 7 May 2021.

Appellant continued to engage in misconduct while in pretrial confinement. On 10 May 2021, in his seventh act of misconduct, Appellant committed

---

[9] The battery offense was a lesser included offense of the charged offense of abusive sexual contact in violation of Article 120(c), UCMJ, 10 U.S.C. § 920(c).

batteries against three different security forces personnel—two non-commissioned officers (NCOs) and a senior airman—tasked to supervise Appellant while he provided a urine sample required as part of routine in-processing for all pretrial confinees. Essentially, Appellant willfully disobeyed standard instructions from security forces personnel and then lunged at one of the security forces members. A struggle ensued, and, by the time it was over, all three security forces members sustained some form of injury. Most of these injuries were abrasions and cuts. However, more seriously, one of the NCOs suffered a torn meniscus and a partially torn medial cruciate ligament in her knee which, as she testified during sentencing, precipitated a medical board and the prospect of a medical retirement cutting short her ten-and-a-half-year Air Force career. Meanwhile, Appellant was apparently amused by the whole fracas and, in the aftermath, quipped to one of the security forces troops who had tried to restrain him, "[H]ey man, do better, lift weights."

Following this incident, Appellant remained in pretrial confinement from 7 May 2021 until his trial. Charges encompassing all convicted misconduct summarized above were preferred against Appellant on 10 June 2021. Appellant demanded a speedy trial on 11 June 2021, and on 29 June 2021 waived his right to a preliminary hearing on those charges. Nonetheless, the Government opted to hold a preliminary hearing anyway, which took place on 12 July 2021.[10] Meanwhile, the Rule for Courts-Martial (R.C.M.) 706 board requested by Appellant's trial defense counsel to evaluate Appellant's mental responsibility and competency to stand trial returned its results on 28 July 2021, concluding Appellant did not suffer from a severe disease or defect either at the time of his alleged offenses or at the time of his evaluation. Ultimately, following referral of all the misconduct recounted above, Appellant was arraigned on 31 August 2021 and pleaded guilty to that misconduct during his court-martial held on 22–24 February 2022.

Following completion of his court-martial on 24 February 2022, the prosecuting legal office, 60th Air Mobility Wing legal office (60 AMW/JA) at Travis AFB, was unable to complete the assembly and forwarding of Appellant's ROT to this court within the 150-day threshold previously established by this court. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *Moreno*, 63 M.J. at 142). Furthermore, 60 AMW/JA was unable to complete and forward Appellant's ROT prior to Appellant's release from confinement in October 2022. It was not until 13 April 2023—some 412 days following the completion of Appellant's court-martial—that his 377-page trial transcript and

---

[10] For the reasons explained in Section II.B, Post-Trial Delay, *infra*, that later became a fateful decision, as ultimately it was the Government's inability to assemble the preliminary hearing report and its attachments for inclusion in the record of trial that resulted in months of additional delay in the post-trial processing of Appellant's case.

accompanying ROT (including 4 prosecution exhibits, 3 defense exhibits, and 11 appellate exhibits, along with various other attachments) was assembled and forwarded to this court for appellate review.

## II. DISCUSSION

### A. Article 13, UCMJ, Credit for Pretrial Confinement Conditions

Appellant claims the military judge erred in failing to grant Appellant confinement credit for unduly rigorous conditions he endured during his 293 days in pretrial confinement at the Solano County Detention Center (SCDC) in Fairfield, California, while he awaited trial at the nearby Travis AFB. Specifically, Appellant claims relief is warranted because: (1) he was continuously held in "segregation" status confining him to his cell for 23-and-a-half hours a day for the entirety of his pretrial confinement; (2) facility procedures functionally limited his access to communications with his trial defense counsel; and (3) the Air Force Security Forces Center (AFSC) arbitrarily refused to transfer him from the SCDC to a military confinement facility at Vandenberg Space Force Base (SFB), California, despite a specific request to do so by the special court-martial convening authority (SPCMCA). We conclude Appellant's protracted placement in administrative separation status while at the SCDC without any individualized consideration of Appellant or the nature of his charged misconduct was arbitrary and resulted in unduly rigorous conditions of pretrial confinement for Appellant. Accordingly, we grant him sentencing relief in our decretal paragraph.

#### 1. Additional Background

On 7 May 2021 Appellant entered pretrial confinement (PTC) at the SCDC. That facility is administered by civilian authorities employed by the California Department of Corrections. At the time of Appellant's pretrial confinement, Travis AFB had a memorandum of understanding (MOU) with the SCDC to house Air Force pretrial confinees there.[11]

In response to concerns raised to the SCDC authorities by both Appellant and his trial defense counsel, Appellant was placed in the medical housing section of the SCDC from 11 May 2021 to 22 October 2021 (164 days) to monitor his mental health. Any inmate housed in the medical unit is under a heightened level of monitoring by SCDC personnel for any medical or mental health concerns. In addition, while Appellant was housed in the medical unit, he was kept on "administrative separation status." Confinement officials transferred

---

[11] The precise contents of the MOU are unknown to us as neither party admitted the MOU into evidence at trial and the military judge made no findings of fact as to its contents.

Appellant to the "common housing section" on 23 October 2021 but kept him on "administrative separation status" for the remainder of his pretrial confinement, which concluded on 24 February 2023 (125 days).

### a. Conditions of PTC—"Administrative Separation" Status

According to the stipulation of expected testimony from Lieutenant DC of the SCDC (who served as the facility commander) submitted by both parties at trial, administrative separation status while in the "common housing section" of the SCDC entails significant restraints on liberty beyond those imposed on inmates in the general population. The most notable restraint on liberty is the 23-and-a-half hours spent every day in solitary confinement in an individual cell with only a six-by-six-inch window looking into the common area of the facility. The military judge found as a fact, and neither side challenges on appeal, that in Appellant's case, he received only 30–45 minutes a day of "recreation time" outside of his cell for those periods where he was not housed in the medical unit. This recreation time was the only time available to Appellant during the day to conduct any of the following activities: (1) personal hygiene; (2) exercise;[12] (3) personal outgoing phone calls (for a fee); and (4) access to television and day room activities in an empty common area at such times when no other inmates were present. By contrast, non-administrative separation inmates typically received one to two hours of recreation time each day.

In describing the process by which Appellant came to be placed in administrative separation status, Lieutenant DC's stipulated testimony explained that there was no individualized consideration as to how and why Appellant was placed in this restrictive status, rather "[a]ll military entering SCDC are automatically placed in administrative separation status." Outside of military pretrial confinees, Lieutenant DC averred that "child sex abusers tend to be put in administrative separation due to safety concerns of the confinee." Appellant was never charged with a child sex offense, nor were SCDC officials ever told that he had been.

### b. Request to Transfer Appellant's PTC to Vandenberg SFB

At Appellant's trial defense counsel's urging, on 31 October 2021, the SPCMCA requested transfer of Appellant from the SCDC to Vandenberg SFB. Consistent with Air Force regulations, that request was submitted to the Air Force Security Forces Center, Confinement and Corrections Directorate

---

[12] Notably, Appellant was provided no outdoor recreation time at all. Lieutenant DC's stipulation of expected testimony also explained that no inmates housed on the medical unit enjoyed outdoor recreation for the duration of their stay there while special protocols established by the facility to mitigate the spread of COVID-19 among the inmates were still in effect. Appellant's stay in the medical unit coincided with that timeframe.

(AFSFC/FC), who did not relay their decision back to Travis AFB officials until 27 December 2021. The SPCMCA received an email from the 60th Security Forces Squadron Commander, which provided only the barest summary rationale that "there is no legitimate reason for a movement. The MOU with [SCDC] is still valid and does not violate any of [Appellant's] rights."

### c. Article 13, UCMJ, Motions Hearing

Trial defense counsel brought a motion for appropriate relief for an alleged violation of Article 13, UCMJ, asserting that Appellant's conditions of pretrial confinement at the SCDC constituted unduly rigorous conditions unnecessary to secure Appellant's presence for trial.[13] The Defense did not present any evidence directly from Appellant as to his conditions while in confinement. The only information on those conditions lay in emailed complaints from trial defense counsel to the Travis AFB legal office (attached to the defense motion at trial and considered by the military judge) and to the overview of conditions provided by the stipulation of expected testimony from the SCDC commander (as excerpted and summarized by the court *supra* in this section).

Trial defense counsel complained as early as 29 June 2021 that Appellant was not receiving adequate mental health care while at the SCDC. Ultimately, a R.C.M. 706 board of inquiry (requested by Appellant and ordered by the convening authority) concluded that Appellant was suffering from no "serious mental disease or defect" either at the time of his alleged crimes or at the time of his evaluation. In addition, the stipulation of expected testimony from the SCDC commander asserted that Appellant never submitted any complaints directly with the SCDC during the entirety of his pretrial confinement notwithstanding the fact that he was briefed as to that process upon his entry into the SCDC.

As to the other conditions endured by Appellant during his pretrial confinement, trial defense counsel did not present evidence of the typical confinement

---

[13] While available as a theory for relief, trial defense counsel did not assert that the conditions of Appellant's pretrial confinement at the SCDC violated Air Force regulations, including Air Force Manual (AFMAN) 31-115, *Air Force Corrections System*, ¶ 1.2.2.2.1 (22 Dec. 2020), and, as such, Air Force officials' knowing and deliberate decision to house Appellant there constituted an "abuse of discretion" entitling Appellant to relief under R.C.M. 305(k). *See United States v. Adcock*, 65 M.J. 18, 25 (C.A.A.F. 2007). Accordingly, we find Appellant forfeited that basis for relief, and Appellant must demonstrate plain error to obtain relief on this basis on appeal. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citation omitted). For the reason stated *infra* in this opinion, we ultimately award Appellant relief on the basis that the "administrative separation" conditions Appellant endured at the SCDC were themselves an Article 13, UCMJ, violation because they were imposed arbitrarily and more rigorous than necessary to ensure Appellant's presence for trial.

conditions for SCDC pretrial confinees not subject to "administrative separation," nor did they present evidence as to whether space was actually available to house Appellant at the Vandenberg SFB confinement facility. Finally, notwithstanding their claim that the SCDC regulations unduly inhibited their attorney-client communications with Appellant during his pretrial confinement, during oral argument, trial defense counsel conceded, "[D]espite the effort it took to work around these restrictions, I don't feel like I was deprived of the time I needed with [Appellant]."

### d. The Military Judge's Ruling on the Article 13, UCMJ, Motion

The military judge considered the stipulation of expected testimony, additional testimony by Appellant's squadron commander, the written filings of the parties, and the attachments thereto, and issued a written ruling at trial, ultimately denying Appellant any Article 13, UCMJ, credit for his pretrial confinement conditions. In doing so, the military judge made several findings of fact about the conditions of Appellant's confinement, which Appellant largely leaves undisturbed on appeal. Appellant alleges that only one finding of fact by the military judge was clearly erroneous—that there was no fee associated with attorney-client phone calls. As to those findings of fact which Appellant has not attacked, we find that the record lends at least some support to those findings, and thus conclude they are not clearly erroneous.

Ultimately, while the military judge recognized that "[Appellant] has spent the majority of 292 days prior to conviction at court-martial in conditions of isolation," he concluded that the period of isolation was essentially justified because "it appears to have been undertaken in an effort to comply with Air Force confinement requirements that pretrial and post-trial inmates not be comingled." The military judge then ruled that none of the pretrial confinement conditions experienced by Appellant during his pretrial confinement at SCDC were Article 13, UCMJ, violations because "[Appellant] was not actually *punished* by the conditions of his pretrial confinement, nor were those conditions imposed by any authority with an *intent to stigmatize* or punish [Appellant]." (Emphasis added). The military judge's ruling was silent as to whether those same conditions were more rigorous than necessary to assure Appellant's presence at trial.

### 2. Law

#### a. Article 13, UCMJ, Generally

Whether an appellant is entitled to sentence relief due to a violation of Article 13, UCMJ, is a mixed question of law and fact. *See United States v. Savoy*, 65 M.J. 854, 858 (A.F. Ct. Crim. App. 2007) (citing *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F. 1997)). The burden of establishing entitlement to such relief is on the appellant. *See United States v. Mosby*, 56 M.J. 309, 310

(C.A.A.F. 2002) (citation omitted). We will not overturn a military judge's findings of fact, including a finding regarding the intent to punish, unless those findings are clearly erroneous. *Id.* (citing *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F. 2000)). However, a reviewing court's "application of those facts to the constitutional and statutory considerations, as well as any determination of whether [an appellant] is entitled to credit for unlawful pretrial punishment involve independent de novo review." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005) (citations omitted).

Article 13, UCMJ, provides, in the pertinent part: "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence [at trial] . . . ."

"Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial." *King*, 61 M.J. at 227.

To qualify as "rigorous" within the meaning of Article 13, UCMJ, the conditions must be "sufficiently egregious [to] give rise to a permissive inference that an accused is being punished, or the conditions . . . [were] so excessive as to constitute punishment." *Id.* at 227–28 (citations omitted) (holding solitary confinement in a six-by-six-foot windowless cell without any specific rationale was unduly rigorous). Earlier decisions from the United States Court of Appeals for the Armed Forces (CAAF) explained that "genuine privations and hardship over an extended period of time" may rise to the level of a due process violation and warrant relief. *See United States v. Fricke*, 53 M.J. 149, 155 (C.A.A.F. 2000) (citations omitted) (holding that appellant's 326 days of pretrial confinement, where he was locked in his cell 23 hours a day and was required to sit or stand near a small wooden desk for 15-and-a-half hours to keep from falling asleep, raised a legal claim of unduly rigorous conditions in violation of Article 13, UCMJ).

### b. Air Force Confinement Regulations

Pertinent to this case, Air Force Manual (AFMAN) 31-115, *Air Force Corrections System*, (22 Dec. 2020), governs, *inter alia*, minimum standards for: (1) pretrial confinement conditions for Airmen and Guardians; and (2) contracts and support agreements for housing military personnel in civilian confinement facilities where the installation concerned does not have a confinement facility of its own. Paragraph 1.2.2.2 of that regulation appears to require the Air Force to limit formation of contracts with civilian confinement facilities to those institutions where confinement conditions comport with Air Force standards: "Any circumstance that would cause an anticipated incarceration

at a location other than the parent installation necessitates a written . . . contract [with a non-federal government or a civilian entity] . . . . The parent installation retains responsibility to secure appropriate facilities via [support agreement], contract, or [memorandum of agreement]."

Moreover, AFMAN 31-115 authorizes separation of military personnel from other like-status inmates in limited circumstances: "[f]or safety and security, separate both high profile and military unique charged (e.g., espionage) confinees, when using non-military facilities, from the general population." *Id.* at ¶ 1.2.2.1. The same regulation further instructs that Air Force pretrial inmates receive a maximum custody classification for their first 72 hours of confinement as an "acclimation period." *Id.* at ¶ 5.4.5. Thereafter, an individualized classification should be accomplished within 24 hours considering: "the alleged offenses, history of violence and prior criminal history, history of escape and flight risk, outstanding detainers or warrants, institutional disciplinary history (if applicable), substance abuse, stability factors (e.g., age, employment, residence, family ties), as well as physical and any previous mental health appraisal(s)." *Id.* at ¶ 5.4.5.1. Finally, any additional period of administrative segregation "should not normally exceed 30 calendar days." *Id.* at ¶ 5.5.4.1.2. Finally, AFMAN 31-115 encourages confinement officials to conduct frequent reevaluations of administrative segregation classifications, specifically noting that "[i]t is prudent to keep the use of these restrictions to a minimum, thus periodic case reviews are beneficial to the confinee and the facility." *Id.* at ¶ 5.5.4.1.1.[14]

---

[14] Even assuming arguendo that AFMAN 31-115 did not create an affirmative obligation on the Air Force to engage in support agreements and contracts with civilian facilities capable of meeting Air Force standards, we note that, at a minimum, the UCMJ entitles Appellant to be treated "subject to the same discipline and treatment as persons confined or committed by the courts of the . . . State . . . in which the institution is situated." Article 58, UCMJ, 10 U.S.C. § 858. Which is to say, if Air Force standards for "solitary confinement" did not apply, SCDC's applicable standards did.

Were we requested to do so by the parties, we could have taken judicial notice of the SCDC's Inmate Handbook. *Cf. United States v. Paul*, 73 M.J. 274, 278 (C.A.A.F. 2014) (holding while AFCCA improperly took judicial notice of an element of the charged offense, that judicial notice by an appellate court was permissible contingent upon notice and opportunity to be heard by the parties prior to). However, in the absence of the request, we decline to do so *sua sponte* and restrict our consideration to Appellant's confinement condition and the process (or lack thereof) SCDC officials employed to place and kept him there, according to the record evidence, most notably the stipulation of expected testimony from Lieutenant DC.

### c. Conditions of PTC

While pretrial inmates are not immune from placement in maximum security or solitary confinement, reviewing appellate courts will "scrutinize closely any claim that maximum custody was imposed solely because of the charges rather than as a result of a reasonable evaluation of all the facts and circumstances of a case." *United States v. Crawford*, 62 M.J. 411, 414 (C.A.A.F. 2006). If a Court of Criminal Appeals (CCA) concludes the maximum custody was "arbitrary and unnecessary to ensure an accused's presence for trial, or unrelated to the security needs of the institution, [the CCA] will consider appropriate credit or other relief to remedy this type of violation of Article 13, UCMJ." *Id.* (citation omitted).

Separate and apart from whether there was any punitive intent in imposing a particular condition of pretrial confinement or any special inmate classification status under the first prong of the Article 13, UCMJ, analysis, the second prong forbids unduly rigorous conditions that might appertain to an otherwise non-punitive pretrial confinement security status. *See King*, 61 M.J. at 227. Military appellate courts frequently opine as to whether the conditions of pretrial confinement, even if undertaken with non-punitive intent, can rise to the level of being unduly rigorous. In a series of cases considering whether avoidance of comingling pretrial and post-trial detainees (to avoid Article 13, UCMJ, violations), and servicemembers and foreign nationals (to avoid Article 12, UCMJ, 10 U.S.C. § 812, violations) was a sufficient justification to hold servicemembers in isolated confinement under harsh conditions, this court and our superior court repeatedly rejected such a blanket rationale. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016) (holding this court did not abuse its discretion when it reduced the length of a servicemember's sentence where, at the request of military authorities, he was placed in solitary post-trial confinement while being held in a civilian confinement facility in order to avoid comingling with potential foreign nationals in violation of Article 12, UCMJ); *United States v. McPherson,* 73 M.J. 393, 399–400 (C.A.A.F. 2012) (Baker, C.J., concurring in part and dissenting in part) (disapproving of the possibility that servicemembers might be placed in solitary confinement regardless of their behavior merely to avoid giving rise to relief under Article 12, UCMJ); *United States v. Palmiter*, 20 M.J. 90, 95–97 n.11 (C.M.A. 1985).

Our superior court spoke particularly powerfully on this issue in *Palmiter*, where the court observed that unduly rigorous conditions do not become "necessary" within the meaning of Article 13, UCMJ, simply because they were ostensibly undertaken to avoid another evil. While the court in *Palmiter* was addressing harsh conditions encountered when confinement officials were seeking to avoid comingling of pretrial and posttrial detainees, their observation is equally applicable to circumstances where Air Force officials initiate

MOUs with civilian confinement facilities to wholly segregate Air Force confinees from civilians.

> Given the limited facilities and programs available at most installations, the total separation of pretrial confinees from the general population of confinement facilities might well result in the imposition of much harsher conditions than those imposed upon some prisoners who have been sentenced to hard labor. We cannot believe that such an illogical and anomalous result is necessary or was intended by Congress.

*Palmiter*, 20 M.J. at 94.

Summarizing this line of cases, we observe that whatever the benign intent of confinement officials might be to avoid one malady (*e.g.*, comingling of post-trial and pretrial confinees or comingling servicemembers with foreign nationals), that alone does not render the unduly rigorous conditions resulting from the protracted segregation of these inmates as necessary within the meaning of Article 13, UCMJ. In short there is no expediency exception to Article 13's protection of pretrial confinees from unduly rigorous conditions unnecessary to ensure their appearance at trial. *See King*, 61 M.J. at 228 (holding that solitary confinement in windowless cell during pretrial confinement was unduly rigorous absent a specific security classification); *United States v. Harris*, No. NMCCA 200500452, 2007 CCA LEXIS 55, at *7 (N.M. Ct. Crim. App. 15 Feb. 2007) (unpub. op.) (holding 21 hours a day in a maximum-security cell during pretrial confinement was unduly rigorous), *aff'd*, 66 M.J. 166 (C.A.A.F. 2008).

### d. Meaningful Relief for Article 13, UCMJ, Violations

R.C.M. 305(k) is the mechanism for providing relief for Article 13, UCMJ, violations. *See United States v. Crawford*, 62 M.J. 411, 414 (C.A.A.F. 2005) (citations omitted). In the face of Article 13, UCMJ, violations, we have the obligation to provide meaningful, proportionate relief. *United States v. Zarbatany*, 70 M.J. 169, 177 (C.A.A.F. 2011). Meaningful relief is determined by assessing "factors such as the nature of the Article 13, UCMJ, violations, the harm suffered by the appellant, and whether the relief sought is disproportionate to the harm suffered or in light of the offenses for which the appellant was convicted." *Id*. at 176–77 (citing *United States v. Harris*, 66 M.J. 166, 169 (C.A.A.F. 2008)).

Ordinarily, Article 13, UCMJ, relief is meted out in terms of confinement credit. *Id* at 174. When the term of confinement has expired, courts are authorized to provide credit to other components of the sentence to ensure an appellant receives meaningful relief for any Article 13, UCMJ, violations. *See id*. at 175 (citing *United States v. Josey*, 58 M.J. 105, 107–08 (C.A.A.F. 2003); *United States v. Rosendahl*, 53 M.J. 344, 347 (C.A.A.F. 2000)). That discretion includes the authority to disapprove a punitive discharge. *Id*. at 170. However, our

superior court also observed in *Zarbatany* that "[c]onversion of confinement credit to forms of punishment other than those found in R.C.M. 305(k) is generally inapt. This is especially true in the case of punitive discharges, where the qualitative differences between punitive discharges and confinement are pronounced," and furthermore, "relief is not warranted or required where it would be disproportionate to the harm suffered or the nature of the offense." *Id.*[15]

### 2. Analysis

#### a. Legal Error in Military Judge's Article 13, UCMJ, Analysis.

The military judge's ruling here cannot stand because it contains a fatal legal flaw: it conflates prong one and prong two of the Article 13, UCMJ, analysis, and in so doing, implicitly holds that only rigorous conditions accompanied by punitive intent constitute Article 13, UCMJ, violations. Not so.

While we agree with the military judge that there was no overt purpose or intent to punish Appellant, Article 13, UCMJ, has two prohibitions. In light of the second prohibition (*i.e.*, pretrial confinement more rigorous than required to insure the confinee's presence for trial) and *King*, we assess the conditions of Appellant's pretrial confinement at SCDC—involving physical segregation in a cell for 23-and-a-half hours a day without an individualized demonstration of cause—and deem them more rigorous than the circumstances required to insure Appellant's presence at trial. The "set it and forget it," rote imposition of those severe conditions (apparently established ex ante by Air Force and SCDC officials in their MOU), without any re-evaluation of their practical necessity as applied to Appellant under evolving circumstances, rendered them sufficiently arbitrary and excessive to constitute punishment.

Indeed, the military judge's principles of law omit any mention of cases aimed at prong two of the Article 13, UCMJ, analysis. In particular, the military judge never cited to the most applicable case on point for analysis of overly rigorous pretrial confinement conditions associated with maximum custody classifications and inmates held in isolation: *United States v. King*, 61 M.J. 225

---

[15] Illustrating this principle in practice, on remand in *Zarbatany*, this court ultimately held that set aside of appellant's punitive discharge would be disproportionate notwithstanding the 415 days of excess confinement credit remaining at the end of his term of confinement. *United States v. Zarbatany*, No. ACM 37448, 2012 CCA LEXIS 8, *4–6 (A.F. Ct. Crim. App. 9 Jan. 2012) (unpub. op.) (holding the appellant still received meaningful relief because application of the appellant's Article 13, UCMJ, credit resulted in his "immediate release from confinement following announcement of sentence, and the convening authority disapproved the adjudged forfeitures").

(C.A.A.F. 2005). Instead, his analysis centered entirely on whether a particular pretrial governmental action constituted an intent to punish.[16]

Reviewing the military judge's conclusions of law de novo, we find error in two other conclusions: (1) we disagree that the conditions of Appellant's pretrial confinement were either "necessary" to ensure Appellant's presence for trial, or related to a legitimate governmental objective of regulatory compliance where neither the Air Force nor the SCDC followed their own regulations in assigning Appellant to indefinite administrative separation status without any individualized review; and (2) to the extent the military judge relied upon defense-requested docketing of a trial date four months after the Government's case ready date as a ratification of the pretrial confinement conditions as acceptable, this analysis was not supported by the record and is a clearly unreasonable application of facts to law.[17] There is no "defense non-availability" exception to Article 13, UCMJ. The defense counsel's unavailability for trial did not excuse the Government from its duty to ensure that the conditions of Appellant's pretrial confinement were not unduly rigorous.

The final paragraph of the military judge's ruling also appears to conflate prongs one and two of Article 13, UCMJ, analysis. Here, the military judge essentially concluded that because there was no punitive intent, no Article 13, UCMJ, violation occurred: "[T]his Court finds that the accused was not actually punished by the conditions of his pretrial confinement, nor were those conditions imposed by any authority with an intent to stigmatize or punish the accused."

Similarly to *King*, no rationale was offered at trial or on appeal for why Appellant was placed in such an isolated and extreme classification for so long. *See King*, 61 M.J. at 225 ("The Government has proffered no . . . sound reason

---

[16] The military judge primarily relied upon *United States v. Smith* for his Article 13, UCMJ, analysis. 53 M.J. 168 (C.A.A.F. 2000). However, *Smith* was concerned with whether the Government had an illegal intent to punish the appellant in imposing restriction conditions following the appellant's release from pretrial confinement prior to trial—a prong one type analysis. *Id.* at 171–72. Prong two of the Article 13, UCMJ, analysis (*i.e.*, whether the "arrest or confinement imposed upon him be any more rigorous than the circumstances require to ensure his presence [at trial]") was not at issue in *Smith* because the Defense did not allege the pretrial restrictions themselves were onerous or severe, only that they had been imposed with punitive intent. *Id.* at 170–71.

[17] The military judge asserted in the Analysis section of his ruling: "a significant portion of the total time the accused spent in confinement awaiting trial was attributable to the availability of his counsel, and the [c]ourt does not hold the Government responsible for that delay when evaluating whether a violation of Art[icle] 13, UCMJ, has occurred."

why [appellant], a pretrial inmate, was singled out and suffered segregation in a six-by-six, windowless cell."). Indeed, the reasonable implication of the SCDC commander's stipulated testimony that "[a]ll military entering SCDC are automatically placed in administrative separations status" indicates mechanical inmate classification bereft of individualized consideration. Even assuming *arguendo* that the motive here was benign (*i.e.*, that military personnel are placed indefinitely under the severe constraints of administrative separation status for their own protection from the civilian inmates), such benign motives do not change the underlying conditions of isolation and privation endured by Appellant. Indeed, our superior court has rejected such benign motives for justifying the Government keeping a servicemember in prolonged isolated status. *See Gay*, 75 M.J. at 269 (holding solitary confinement to avoid comingling with foreign nationals did not excuse overly onerous conditions); *McPherson*, 73 M.J. at 399–400 (same*); Palmiter*, 20 M.J. at 94 (holding solitary confinement to avoid comingling with post-trial inmates did not excuse overly onerous conditions).

Thus, here we are compelled to conclude, like our superior court in *King*, that Appellant's indefinite administrative separation classification at the SCDC was "an arbitrary response to the physical limitations at [the confinement facility]." *See* 61 M.J. at 228.

Informing our decision that Appellant's inmate classification was arbitrary and bereft of individual review, we note that the SPCMCA's personal request to transfer Appellant from SCDC to Vandenberg SFB to facilitate better communication with his counsel and mental health treatment was met with delay, indifference, and, ultimately, with a generic denial.[18] The AFSC's denial recited only that the applicable MOU "did not violate [Appellant's] rights," without any indication that the AFSC officials had undertaken any individualized evaluation of Appellant, his suspected crimes, or what security risk (if any) he may have posed to confinement officials. This is akin to the analysis-free decision by confinement officials in *King* which the CAAF found arbitrary and violative of Article 13, UCMJ. *See King*, 61 M.J. at 229 ("Placing [appellant] in a segregated environment with all the attributes of severe restraint and discipline, without an individualized demonstration of cause in the record, was so excessive as to be punishment and is not justified by the . . . confinement facility space limitations.") (citations omitted)).

---

[18] In this regard we take judicial notice of AFMAN 31-115, ¶ 10.4.5, and note that processing of this transfer request was woefully dilatory—56 days vice the 5-duty-day processing standard—all without any explanation by any of the parties at trial as to the reasons for such an extraordinary delay.

### b. Meaningful Relief for Article 13, UCMJ, Violation

Having found error, we must now fashion "meaningful relief" so long as it is not disproportionate under the circumstances. *See Zarbatany*, 70 M.J. at 177. Here, the bad-conduct discharge remains the only unexecuted portion of Appellant's sentence.[19] As the CAAF held in *Zarbatany*, while the CCAs have the authority to set aside a punitive discharge for "excess" Article 13, UCMJ, credits, such a course of action is generally inapt for punitive discharges. *Id.* at 170.

Weighing the nature of the Article 13, UCMJ, violation here against the severity of Appellant's litany of offenses, we conclude that setting aside Appellant's punitive discharge would be disproportionate in this case. Appellant's crimes were serious, committed over a protracted period, and inflicted emotional and physical victim impact. This behavior amply earned Appellant his bad-conduct discharge and this court deems it unnecessary and disproportionate to set aside such an apt punishment for Appellant's misconduct.

While setting aside Appellant's punitive discharge is unwarranted for this particular Article 13, UCMJ, violation, we nonetheless conclude that meaningful and proportionate relief is available to Appellant. Specifically, notwithstanding the fact that Appellant already served his term of confinement,[20] we expect that confinement credit will result in meaningful monetary relief for Appellant. This is so because Article 75(a), UCMJ, 10 U.S.C. § 875(a), provides for the restoration of any rights and privileges from any disapproved sentence in the course of appellate review.[21]

---

[19] While neither party's briefs provide an affirmative date for Appellant's release, insofar as Appellant was sentenced to 18 months of confinement on 24 February 2022, with 293 days of *Allen* pretrial confinement credit, he would have had a maximum of 247 days left to serve (absent any facility-provided "good time" credits while in confinement), rendering his maximum release date approximately 26 October 2022. *See United States v. Allen*, 17 M.J. 126, 128–29 (C.M.A. 1983).

[20] While the precise date of Appellant's release from confinement and commencement of involuntary excess leave is not before us, the record of trial indicates that Appellant was still in confinement as late as the end of July 2022, as evidenced by his receipts for the Statement of Trial Results and entry of judgement, which he signed for in confinement.

[21] Here, we note that the convening authority ordered Appellant to be placed upon involuntary excess leave "upon completion of [his] term of confinement." Accordingly, were we to disapprove portions of his previously served confinement, all of which were served prior to Appellant's expiration of the term of service and placement on involuntary excess leave, the net result would be a day-for-day pay for Appellant at his

Thus, we deem that meaningful and proportionate relief is to award day-for-day confinement credit for each day Appellant spent in administrative separation prior to and following his release from the medical unit (where isolation was dictated by then-existing COVID-19 protocols)—a total of 129 days. *See United States v. Gonzales*, No. ACM 39220, 2019 CCA LEXIS 58, at *50–51 (A.F. Ct. Crim. App. 14 Feb. 2019) (unpub. op.) (citation omitted) (awarding 300 days of confinement credit for unnecessary maximum custody classification of appellant during pretrial confinement), *United States v. Jimenez*, No. ACM 39200, 2018 CCA LEXIS 304, at *30–33 (A.F. Ct. Crim. App. 20 Jun. 2018) (unpub. op.) (finding military judge's award of 200 days of Article 13, UCMJ, credit sufficient where the appellant was held in pretrial confinement under maximum security conditions without the opportunity for reassessment); *United States v. Catano*, No. ACM 39092, 2018 CCA LEXIS 1, at *14–16 (A.F. Ct. Crim. App. 3 Jan. 2018) (unpub. op.) (affirming the military judge's granting 277 days of credit for illegal pretrial punishment where the appellant was arbitrarily held in maximum custody and unnecessary segregation while in pretrial confinement while declining to apply the excess confinement credit to the bad-conduct discharge).[22]

## B. Post-Trial Delay

Appellant asserts the Government violated his right to speedy post-trial review in taking 412 days from the announcement of sentence to the docketing of Appellant's ROT with this court—262 days longer than the 150-day standard established by binding caselaw. For the reasons set forth below, we agree. While we conclude Appellant did not suffer a due process violation from this delay, we are nonetheless convinced that Appellant's sentence was rendered "inappropriate" by virtue of the unjustified and protracted delay, and we take corrective action accordingly in our decretal paragraph.

---

applicable pay grade at the time of his confinement. *Cf. United States v. Hammond*, 61 M.J. 676, 680 (A. Ct. Crim. App. 2005) (citation omitted) (ordering DFAS to effect two months of pay to the appellant at the grade of E-4 for excess post-trial confinement served); *United States v. Harding*, 61 M.J. 526, 530 (A. Ct. Crim. App. 2005) (holding Article 75(a), UCMJ, mandates restoration of pay for illegal post-trial confinement).

Our analysis here is limited to a judicial interpretation of the effect of Article 75(a), UCMJ, as it bears upon the obligation established by our superior court for CCAs to fashion meaningful, but not disproportionate, relief for Article 13, UCMJ, violations.

[22] Finally, even if our disapproval of Appellant's previously served confinement time does not result in financial remuneration for Appellant, we *still* would decline to set aside Appellant's punitive discharge for the reasons described *supra. See Zarbatany*, unpub. op. at *4–6.

### 1. Additional Background

To summarize the Government's post-trial chronology (submitted by the Government and accepted by the court as an attachment to the ROT in this case), the explanation for the 412 total days from sentencing to docketing boils down to two things: inexperience and workload. The Government attempts to justify the delay thus: "During the period of [April 2022 through August 2022], there were only [two] paralegals supporting the entire military justice section. There were [four] courts back to back in [April 2022], and the [two] paralegals worked those post-trial actions while keeping day[-]to[-]day justice actions moving."

The post-trial chronologies, provided by the court reporter and base legal office (60 AMW/JA) and included within the ROT, establish the following timeline of pertinent events in the post-trial process:[23]

> 24 Feb 2022 (Day 0): The sentence is adjudged.
>
> 07 Mar 2022 (Day 12): Appellant submits clemency request.
>
> 11–30 Mar 2022 (Days 16–35): 60 AMW/JA elicits and receives post-trial victim submissions to the convening authority for consideration during clemency.
>
> 05–08 Apr 2022 (Days 41–44): Trial dates for special court-martial *United States v. Gelgota.*
>
> 13 Apr 2022 (Day 49): Trial date for special court-martial *United States v. Kilkenny.*
>
> 13 Apr 2022 (Day 49): In the midst of transcribing and serving as court reporter on four other cases, the court reporter begins rolling submissions of Appellant's trial transcript to counsel for review.
>
> 20 Apr 2022 (Day 56): Trial date for special court-martial *United States v. Phillips.*
>
> 25–28 Apr 2022 (Days 60–63): Trial dates for general court-martial *United States v. Henderson.*

---

[23] Unless indicated otherwise, the following timelines, with some grammatical editing from the court, come entirely from the court reporter chronology in the ROT and 60 AMW/JA chronology submitted by the Government as an attachment to their brief in this case.

11 May 2022 (Day 77): 60 AMW/JA sends crime victim JB's[24] post-trial clemency opposition matters to Appellant in military confinement for his review and potential rebuttal—43 days *after* 60 AMW/JA received such matters from JB.

17 May 2022 (Day 83): Convening authority signs the convening authority decision on action memorandum (CADAM).

25 May 2022 (Day 91): The court reporter sends the final 289 pages of Appellant's trial transcript to both trial counsel and trial defense counsel for review.

23 Jun 2022 (Day 120): Trial counsel completes trial transcript review, providing only minor edits to the 377-page transcript.

30 Jun 2022 (Day 127): The ROT assembly *begins*.

05 Jul 2022 (Day 132): The CADAM is served on Appellant in military confinement.

13 Jul 2022 (Day 140): Military judge signs the entry of judgment.

18 Jul–23 Aug 2022 (Days 145–181): 60 AMW/JA corresponds with all five crime victims in an effort to retrieve ROT elections receipt forms.

12 Sep 2022 (Day 201): Court reporter assembles preliminary hearing report and exhibits for inclusion as attachment to the ROT.

10–18 Oct 2022 (Days 229–237): Case paralegal discovers errors in ROT during 60 AMW/JA internal review (including missing preliminary hearing exhibit and missing defense counsel receipt for preliminary hearing officer (PHO) report).

27–28 Oct 2022 (Days 246–247): Case paralegal emails PHO regarding missing PHO Exhibit 27, which the PHO provides.

04 Nov 2022 (Day 254): Case paralegal submits ROT for 7-level paralegal review at 60 AMW/JA.

18 Nov 2022 (Day 268): The ROT is returned to case paralegal for record corrections (missing defense counsel, Appellant, and victim receipts for various items).

---

[24] JB was the owner of the vehicle which Appellant illegally sold after forging JB's name to a bill of sale.

22–27 Dec 2022 (Days 302–307): 60 AMW/JA *begins* compiling *Moreno*[25] chronology.

11–13 Jan 2023 (Days 322–323): 60 AMW/JA assembles the ROT.

18 Jan 2023 (Day 329): ROT "blocking" continues; delayed due to edits for coversheets, missing page numbers, and a missing allied paper excerpt (pages 23–27 of the OSI Report of Investigation).

19–27 Jan 2023 (Days 330–339): Six of seven ROT volumes "blocked."

30 Jan 2023 (Day 342): Appellant's ROT is complete.

31 Jan 2023–3 Feb 2023 (Days 343–346): 60 AMW/JA staff judge advocate and case paralegal review and edit *Moreno* chronology.

09 Feb 2023 (Day 352): 60 AMW/JA sends *Moreno* chronology to 18th Air Force Office legal office (18 AF/JA).[26]

14 Feb 2023 (Day 357): 60 AMW/JA sends ROT to 18 AF/JA.

23 Mar 2023 (Day 393): 18 AF/JA transmits ROT to Appellate Records.

13 Apr 2023 (Day 412): The ROT is docketed with this court.

31 May 2024: Appellant files his assignment of errors, after requesting and receiving 11 enlargements of time (over Government opposition).

**2. Law**

We review the question of whether an appellant's due process rights are violated because of post-trial delay de novo. *Livak*, 80 M.J. at 633 (citation omitted).

Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2), provides this court with discretionary authority to provide "appropriate relief" for "excessive delay in the processing of the court-martial after the judgment was entered into the record under [Article 60c, UCMJ, 10 U.S.C. § 860c]."

---

[25] *See Moreno*, 63 M.J. at 138 (holding "[t]he Government bears responsibility" of explaining the reasons for delay).

[26] In this case, the 18 AF commander was the general court-martial convening authority.

"[C]onvicted servicemembers have a due process right to timely review and appeal of [their] courts-martial convictions." *Moreno*, 63 M.J. at 135 (citations omitted).

In *Livak,* this court established an aggregated sentence-to-docketing 150-day threshold for facially unreasonable delay in cases referred to trial on or after 1 January 2019. *Livak,* 80 M.J. at 633 (citation omitted). On a similar subject, our superior court long ago declared in *United States v. Dunbar* that "delay in the administrative handling and forwarding of the ROT and related documents to an appellate court [ ] is the least defensible of all and worthy of the least patience" because "this stage involves no discretion or judgment[,] and unlike an appellate court's consideration of an appeal, this stage involves no complex legal or factual issues or weighing of policy considerations." 31 M.J. 70, 73 (C.M.A. 1990).

If there is a presumptive or an otherwise facially unreasonable delay, we examine the matter under the four non-exclusive factors set forth in *Barker*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted). *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted). Explicating those terms, oppressive incarceration "relates to the substantive merit of an appellant's grounds for appeal," and exists where "incarceration was . . . lengthened by the delay." *See United States v. Toohey*, 63 M.J. 353, 361 (C.A.A.F. 2006) (citing *Cody v. Henderson*, 936 F.2d. 715, 720 (2d Cir. 1991)). Reviewing claims of "anxiety and concern," qualifying circumstances "involve[ ] . . . anxiety that arises from excessive delay and we 'require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.'" *Id.* at 361 (quoting *Moreno*, 63 M.J. at 140). "We analyze each factor and make a determination as to whether that factor favors the Government or appellant." *Moreno*, 63 M.J. at 136 (citation omitted). Then, we "balance our analysis of the factors" to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533).

"No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). As part of that analysis, reviewing courts should consider the motivations (if any) behind those delays, including whether the reasons for the post-trial delay

were motivated by bad faith. *See United States v. Anderson*, 82 M.J. 82, 86–88 (C.A.A.F. 2022).

In the presence of a due process violation, the sentence may only stand as adjudged if the error was harmless beyond a reasonable doubt. *United States v. Bush*, 68 M.J. 96, 102 (C.A.A.F. 2009) (citations omitted). Such delay is not harmless beyond a reasonable doubt if it delayed substantive relief to Appellant on a substantive issue raised on appeal. *Id.*; *see also United States v. Dearing*, 63 M.J. 478, 487 n.45 (C.A.A.F. 2004) (concluding that appellant suffered prejudice where he served more than the maximum confinement allowable for his affirmed convicted misconduct when his primary convicted misconduct was dismissed on appeal).

Even in the absence of a due process violation, "a Court of Criminal Appeals has authority [exercising its sentence appropriateness review powers] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ, 10 U.S.C. § 859(a),] if it deems relief appropriate under the circumstances." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted). The essential inquiry under *Tardif* is whether, given the post-trial delay, the sentence "remains appropriate[ ] in light of all circumstances." *Toohey*, 63 M.J. at 362 (citing *United States v. Bodkins,* 60 M.J. 322, 324 (C.A.A.F. 2004) (per curiam)).

We provided a further analytical framework for that analysis in *United States v. Gay*, where we set forth six factors to consider before granting "sentence appropriateness" relief under *Tardif*, even in the absence of a due process violation:

> 1. How long did the delay exceed the standards set forth in [*Moreno*]?
>
> 2. What reasons, if any, has the [G]overnment set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?
>
> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?
>
> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?
>
> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In our consideration of the above factors, "no single factor [is] dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate." *Id.* (footnote omitted).

This court has recently been obliged to grapple with a series of cases involving post-trial delay at various stages, all of which raise serious questions as to the scope of potential institutional neglect within the Air Force, particularly when it comes to timely and accurate assembly of records of trial and forwarding of verbatim trial transcripts. *See United States v. Valentin-Andino*, No. ACM 40185 (f rev), 2024 CCA LEXIS 223, at *17–19 (A.F. Ct. Crim. App. 7 Jun. 2024) (unpub. op.) (summarizing remand of 20 cases for transcript and ROT errors in fiscal year 2023 alone and describing the trend as one that "happen[s] at an alarming frequency in the Air Force"), *rev. granted,* __ M.J. __, No. 24-0208/AF, 2024 CCA LEXIS 571 (C.A.A.F. 30 Sep. 2024). The court found "a systemic problem indicating institutional neglect" with regards to "errors in records of trial causing delays in appellate review." *Id.* at *17. None of which is to say that relief is appropriate in every case which exceeds a *Livak* post-trial processing standard. *See id.* at *19. ("[W]e do not find that sentence relief is per se warranted due to errors in compilation of a complete [ROT]."). As ever, the severity of a post-trial processing violation must be assessed on a case-by-case basis.

### 3. Analysis

Applying the principles above and analyzing the protracted post-trial delays under the dual lenses of due process (*Moreno* and *Toohey*) and sentence appropriateness (*Tardif* and *Gay*), we hold as follows: (1) Appellant suffered no prejudice within the meaning of *Moreno*; (2) that in the absence of *Moreno* prejudice, the length and severity of the delay were not so extreme as to constitute a due process violation (*Toohey*); but that (3) the Government nonetheless flouted Appellant's speedy post-trial processing rights for an inordinate amount of time with no justifiable excuse for such a delay. All of which leads to our conclusion that: (4) under the unique facts of this case, the dilatory post-trial processing of a relatively small ROT where it took the Government nearly three times the time allotted under *Livak* to simply compile and deliver the ROT to this court counsels strongly in favor of this court utilizing our sentence appropriateness authority under *Tardif* and *Gay*. Accordingly, for the reasons set forth below we fashion a remedy that significantly reduces Appellant's sentence.

### a. Moreno *Analysis (Speedy Post-Trial Review and Due Process)*

To summarize our application of the *Moreno* factors, we conclude (1) that the length of delay and reasons for delay weigh heavily against the Government; (2) that Appellant's invocation of his right to timely review and appeal only after his case reached the appellate level (and not during the protracted ROT assembly period prior to transmittal of his case to this court) weighs slightly against Appellant; and (3) that Appellant suffered no actual prejudice within the meaning of the three categories of harm specified by *Moreno*. Likewise, while the Government's dilatory post-trial processing might tend to adversely impact an objective member of the public's perceptions of fairness and *efficacy* of the military justice system, we find the overall length of delay insufficient to constitute a *Toohey* violation insofar as the length and attendant circumstances of that delay ultimately would not impact the public's perception of the fairness and *integrity* of the system. We briefly detail our rationale for each factor in turn.

#### i) *Length of delay*

Appellant's case reached this court 412 days after he was sentenced. To express this number differently, it took the Government 174 percent longer than the allotted benchmark of 150 days to complete post-trial processing. The length of this presumptively unreasonable delay, 262 days, is significant in light of our precedent in *Livak*.

#### ii) *Reasons for delay*

We find "bad faith" played no role in this protracted delay. Here we find only inexperience at the case paralegal level—apparently left to languish by their office leadership until over a year into the ROT assembly process. The absence of bad faith here mitigates against a finding of a due process violation. *See Anderson*, 82 M.J. at 88 (holding that 481 days of post-trial delay between sentencing and convening authority action on the sentence was "not severe enough to taint public perception of the military justice system," because it did not involve the extreme protracted post-trial delays of *Moreno* (six years); *Toohey* (six years); and *Bush* (seven years); and because, crucially, "[t]here [was] no indication of bad faith on the part of any Government actors").

But to be clear, we are wholly *unconvinced* by the Government's assertion that the workaday concerns of "back-to-back-to-back cases" handled by the Travis AFB legal office in April 2022 (90 days before the 150-day *Livak* benchmark for Appellant's case) justifies the protracted delay for a relatively straightforward ROT. We note first that efforts to assemble the constituent exhibits and attachments to the ROT apparently did not even *begin* at the base legal office until *after* the verbatim transcript was completed in late June 2022 (already nearly 120 days after Appellant's sentencing). Thereafter, once

assembly of the ROT began in earnest on 30 June 2022, several of the delays in this case involved matters that are attachments to the record, but not, strictly speaking, mandatory components of the ROT itself as defined by the President in the *Manual for Courts-Martial. Compare* R.C.M. 1112(f) *with* R.C.M. 1112(b) (defining the mandatory contents of the ROT to include a substantially verbatim recording of the court proceedings and all "evidence or exhibits considered by the court-martial in determining the findings or sentence").

Other self-inflicted wounds included the protracted delay to assemble the preliminary hearing report and its exhibits for its inclusion as an attachment to the ROT—some 46 additional days (12 September–28 October 2022) for a hearing that Appellant had attempted to waive in the first instance but which the Government insisted on holding. Inexplicably, the Government apparently did not notice it was not in possession of all of the exhibits to the PHO report until after Appellant's court-martial. In fact, the Government's post-trial chronology indicated it did not reach out to the PHO for a missing exhibit until 27 October 2022—a staggering eight months after trial. Perhaps most tellingly, the absence of supervision over the junior paralegals laboring to assemble ROTs for appellate review can be gleaned by the fact that the Government did not even *begin* to annotate their "*Moreno* chronology" until 22 December 2022—some 307 days after sentencing in Appellant's case.

All of which is to say, if the junior case paralegal did not exercise "gross indifference" to speedy post-trial processing, their superiors certainly did. Here, those paralegals were supervised by an experienced, senior noncommissioned officer, who in turn was supervised by a senior field grade officer, a staff judge advocate. This case chronology bespeaks of supervisory failures. This factor weighs heavily in Appellant's favor.

### iii) *Speedy post-trial rights invocation*

Appellant never made a demand for speedy post-trial processing during the 412 days it took the Government to assemble and forward his ROT. Accordingly, this factor weighs against Appellant. *See Moreno*, 63 M.J. at 138 ("While this factor weighs against [appellant] the weight against him is slight given that the primary responsibility for speedy processing rests with the Government and those to whom he could complain were the ones responsible for the delay.")

### iv) *Prejudice*

As to the final prong of *Moreno,* Appellant did not suffer "prejudice" sufficient to substantiate a due process violation. Appellant's only asserted basis for prejudice is that he suffered "oppressive incarceration" engendered by "impairment of [his] grounds for appeal," a position for which he cites *Moreno*, 63

M.J. at 138–39. Given the unique facts of this case, after carefully reviewing all pertinent facts, we conclude that delay did not result in oppressive incarceration where the length of his remaining sentence (approximately 247 days)[27] was such that, practically speaking, this court would likely not have even received Appellant's brief prior to Appellant being released from confinement. This is so because even if the Government had forwarded Appellant's case in 150 days, and even if Appellant would have served all 247 days of post-trial confinement without any "good time credits" awarded by the Department of Defense resulting in his earlier release, that would leave only 97 days for this court to receive Appellant's brief, the Government's answer, and then render a decision. Here, we note that Appellant's counsel requested and received, over Government's opposition, 11 enlargements of time, filing their assignment of errors on 31 May 2024—414 days after the case was docketed with this court.[28]

### b. Tardif *and* Gay *Analysis: Sentence Appropriateness Relief*

Despite the absence of prejudice, we are mindful that non-prejudicial delays may still warrant sentencing relief when the combined impact of circumstances occasioned by that delay now render an appellant's sentence inappropriate. *See Gay*, 73 M.J. at 744–45. Suffice it to say, this was not the finest hour for Air Force post-trial processing. As we have noted with distressing repetition of late, the post-trial processing delays here are far from an isolated incident. Accordingly, we conclude that factors two and five of the *Gay* analysis

---

[27] We reach this number by calculating Appellant's remaining sentence, excluding his 297 days of pretrial confinement credit. Appellant's 18-month sentence approximates into roughly 540 days. Accordingly, Appellant had approximately 243 days of post-trial confinement remaining as of the date of his sentence on 24 February 2022.

[28] We note that the oppressive incarceration analysis is not so straightforward as Appellant would have it—*i.e.*, that if an appellant prevails on any substantive assignment of error, that *ipso facto*, he suffered oppressive incarceration. CAAF's language in *Moreno* is not so categorical. Our superior court qualified that language with a key word—"*may.*" *See Moreno*, 63 M.J. at 139 ("[I]f an appellant's substantive appeal is meritorious and the appellant has been incarcerated during the appeal period, the incarceration *may* have been oppressive." (emphasis added) (citing *Coe v. Thurman*, 922 F.2d 528, 532 (9th Cir. 1990)). The citation to *Coe* is, in turn, interesting because *Coe* appears to be addressing only circumstances where an underlying conviction was reversed on appeal. *See Coe*, 922 F.2d at 532 (citation omitted) ("[T]he incarceration would be unjustified and thus oppressive were the appellate court to find [appellant's] conviction improper. If it affirms the conviction, however, the incarceration will have been reasonable."). Here, suffice it to say that because the delay made no practical difference in Appellant's ability to receive appellate relief to reduce his sentence to confinement prior to his completion of that sentence, he did not suffer oppressive incarceration.

weigh strongly in favor of our exercising our Article 66, UCMJ, powers to reevaluate the appropriateness of Appellant's sentence in light of the unjustified post-trial delay in this case. In sum, the 412 days of post-trial delay created by personnel overseeing post-trial processing in this case brings it to an intolerably close proximity to "gross indifference."

The simple fact is that Appellant's case was unduly and unnecessarily delayed. For the sake of Appellant, and for the health of the entire Air Force military justice system, an appropriate remedy is required.

### c. Remedy: Sentence Appropriateness Reevaluation

We first conclude that we are authorized to issue "appropriate relief" under our discretionary authority in Article 66(d)(2), UCMJ, given the excessive post-trial delay for all delay occurring after the entry of judgment and continuing until the eventual docketing of this case with our court. We further determine that utilizing the *Tardif/Gay* sentence appropriateness framework is a useful mechanism for determining that "appropriate relief." Accordingly, our relief here encompasses both our Article 66(d)(2), UCMJ, "excessive delay" authority and our Article 66(d)(1), UCMJ, sentence appropriateness authority. Regardless of the rubric, ultimately, we are reevaluating the continuing appropriateness of Appellant's sentence in light of significant post-trial delays caused by the Government. Given that relief in this case is premised upon the Government's dereliction rather than upon prejudice to Appellant, we deem it important to modulate the relief we award. Accordingly, similar to our superior court's approach in *Zarbatany*, we determine that the "appropriate relief" awarded must be "meaningful" without being "disproportionate." 70 M.J. at 177. We perceive that proportionate relief here involves the following: (1) disapproving the 118 days of post-trial confinement remaining after this court's award of 125 days of Article 13, UCMJ, confinement credit, and (2) disapproving the adjudged forfeiture of all pay and allowances in their entirety.[29]

---

[29] We deem this to be meaningful relief mindful of the Article 75(a), UCMJ, restoration provision, mandating that "[u]nder regulations as the President may prescribe, all rights, privileges, and property affected by an executed part of a court-martial sentence which has been set aside or disapproved . . . shall be restored unless or new trial or rehearing is ordered."

By contrast, we determine that Appellant's punitive discharge and reprimand must stand. Even if other relief ordered under our sentence appropriateness authority fails to restore pay to Appellant, the adjudged bad-conduct discharge and reprimand remain uniquely appropriate to mark Appellant's serious misconduct. After careful consideration in light of the *Tardif/Gay* analysis, we conclude setting aside the bad-conduct discharge and reprimand would be disproportionate.

### III. CONCLUSION

We approve only so much of the sentence as provides for a reprimand, reduction to the grade of E-1, and a bad-conduct discharge. The findings, and the sentence as modified, are correct in law and fact, and, except as noted above, no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence, as modified, are **AFFIRMED**.

JOHNSON, Chief Judge (concurring in part and in the judgment):

I largely concur with the opinion of the court, including the result, with one exception. Unlike my esteemed colleagues, I conclude that Appellant forfeited rather than waived his claim that the Government violated his Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810,[*] right to speedy trial. Reviewing for plain error, I would find Appellant is not entitled to relief on this basis.

### A. Additional Background

#### 1. Relevant Timeline

Appellant's commander ordered him into pretrial confinement on 7 May 2021. On 14 May 2021, the pretrial confinement review officer found continued confinement was required to ensure Appellant's presence at future hearings and prevent Appellant from engaging in future misconduct.

On 10 June 2021, Appellant's squadron commander preferred the original 13 charges and 15 specifications against him.

On 11 June 2021, trial defense counsel submitted a request for an inquiry into Appellant's mental capacity and mental responsibility pursuant to R.C.M. 706, commonly known as a "sanity board." On the same day, the Defense submitted a demand for speedy trial.

On 17 June 2021, trial counsel inquired about trial defense counsel's availability for a pretrial hearing pursuant to Article 32, UCMJ, 10 U.S.C. § 832. On 21 June 2021, trial defense counsel objected to holding the pretrial hearing until the sanity board was complete. Nevertheless, on 25 June 2021, the special court-martial convening authority (SPCMCA) appointed a pretrial hearing officer (PHO) and scheduled the pretrial hearing for 12 July 2021.

On 29 June 2021, Appellant waived his right to the preliminary hearing and repeated his demand for a speedy trial. However, the SPCMCA directed

---

[*] Unless otherwise indicated, all references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

the hearing to proceed regardless of Appellant's waiver and over trial defense counsel's objection.

On 1 July 2021, the SPCMCA directed the sanity board to proceed. Trial defense counsel again reiterated the Defense's demand for speedy trial.

The preliminary hearing occurred on 12 July 2021, and the PHO issued her report on 28 July 2021.

The sanity board evaluated Appellant on 28 July 2021. On 13 August 2021, the board issued its findings that at the time of the alleged criminal conduct Appellant did not suffer from a severe mental disease or defect that would have impaired his ability to appreciate the nature and quality or wrongfulness of his actions, nor was he presently suffering from such a condition that would impair his ability to understand the proceedings against him or cooperate in his defense.

On 16 August 2021, the convening authority referred the charges to a general court-martial. Appellant's arraignment took place on 31 August 2021, 116 days after Appellant entered pretrial confinement. At a docketing conference following the arraignment, trial counsel indicated the Government would be ready for trial on 4 October 2021 (150 days after pretrial confinement began), but trial defense counsel informed the military judge the Defense would not be ready until 28 February 2022. The court-martial reconvened on 23 February 2022, and the military judge sentenced Appellant on 24 February 2022.

### 2. Plea Agreement and Guilty Plea Inquiry

On 21 February 2022, Appellant offered to enter a plea agreement, which the convening authority accepted the following day. In the agreement, Appellant agreed, *inter alia*, to plead guilty to ten specifications, in some cases by exceptions and substitutions and in one case to a lesser included offense of the charged offense, as described in the majority opinion. With regard to waiver of motions, in subparagraph 2(f) of the plea agreement, Appellant agreed to the following:

> To waive *certain motions* which may be waived under the Rules for Courts-Martial [R.C.M.]. I do not waive any motions concerning the conditions or circumstances of my pretrial confinement. In addition, in accordance with R.C.M. 705(c)(1)(B), *I understand I am not waiving* the right to counsel, the right to due process, the right to challenge the jurisdiction of the court-martial, *the right to a speedy trial*, the right to complete sentencing proceedings and complete and effective exercise of post-trial and appellate rights . . . .

(Emphasis added).

Appellant subsequently pleaded guilty in accordance with the plea agreement, and the military judge conducted an inquiry into the providence of Appellant's plea and his understanding of the plea agreement. The military judge's colloquy with Appellant regarding subparagraph 2(f), quoted above, included the following:

> MJ: Paragraph 2(f) states that you agree to waive certain motions which may be waived under the Rules for Courts-Martial excluding any motions that concern conditions and circumstances of the pretrial confinement, and it also highlights certain rules under—err, *certain rights under Rule for Court[s]-Martial 705 that you are not waiving as part of this plea agreement. Obviously, it's impermissible under the law to waive those specific rights.*

(Emphasis added). At the military judge's request, trial defense counsel identified several motions the Defense would have brought in the case of a litigated trial; the list did not include a speedy trial motion. The military judge continued, addressing trial defense counsel:

> MJ: . . . Do you, *aside from those rights* that you're prohibited from raising under R.C.M. 705 [sic]—or *that [Appellant] is prohibited from waiving by R.C.M. 705*, and the motion that you filed regarding the illegal pretrial punishment under Article 13, [UCMJ,] does this provision read as—or is it intended to read as a "waive all other waivable motions"?

> DC: Yes, Your Honor.

> MJ: Do you concur with that, Trial Counsel?

> TC: Yes, Your Honor.

> MJ: [Appellant], other than the motion that is identified in paragraph 2(f) regarding that your counsel has asserted as illegal pretrial punishment, this provision requires you to waive all motions which are waivable under the law. And, that means you give up your right to make those—any motions that are waivable under the law. I advise you that certain motions are waived or given up if your defense counsel does not make the motion prior to entering your plea.

> MJ: Some motions, however, such as motions to dismiss for lack of jurisdiction, for example, can never be given up. Do you understand that this term of your plea agreement means that you give up the right to make any motion which by law is given up when you plead guilty?

[Appellant]: Yes, Your Honor.

. . . .

(Emphasis added.).

As described in the majority opinion, after the military judge accepted Appellant's guilty pleas, the parties litigated the Defense's motion for relief for unlawful pretrial punishment in violation of Article 13, UCMJ. The Defense did not file a motion for relief for violation of Appellant's speedy trial rights.

**B. Law**

In general, whether an appellant was denied his right to speedy trial under Article 10, UCMJ, is a question of law we review de novo. *United States v. Reyes*, 80 M.J. 218, 226 (C.A.A.F. 2020) (citing *United States v. Cooley*, 75 M.J. 247, 259 (C.A.A.F. 2016)).

"Whether an accused has waived [or forfeited] an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). Appellate courts generally review forfeited issues for plain error, but "a valid waiver leaves no error to . . . correct on appeal." *Id.* (citation omitted). Under the plain error standard of review, the "[a]ppellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation omitted).

The applicable version of R.C.M. 705(c)(1)(B) provides in part: "A term or condition in a plea agreement shall not be enforced if it deprives the accused of . . . the right to a speedy trial . . . ."

The applicable version of R.C.M. 707(e) provides: "Except as provided in R.C.M. 910(a)(2) [pertaining to conditional guilty pleas], a plea of guilty which results in a finding of guilty forfeits any speedy trial issue as to that offense, unless affirmatively waived."

Article 10(b), UCMJ, provides in pertinent part: "When a person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken [ ] to inform the person of the specific offense of which the person is accused[ ] and [ ] to try the person or to dismiss the charges and release the person." 10 U.S.C. § 810(b). "[T]he factors from *Barker v. Wingo*[, 407 U.S. 514 (1972),] are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted). Accordingly, "our framework to

34

determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Id.* at 129 (citing *Barker*, 407 U.S. at 530) (additional citation omitted). In this context, the "three recognized interests of prejudice are (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Cooley*, 75 M.J. at 262 (citing *Mizgala*, 61 M.J. at 129). However, these factors are not "talismanic" and "must be considered together with such other circumstances as may be relevant.*" United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Barker*, 407 U.S. at 533).

"Article 10, UCMJ, does not demand constant motion but does impose on the Government the standard of 'reasonable diligence in bringing the charges to trial.'" *Cooley*, 75 M.J. at 259 (quoting *Mizgala*, 61 M.J. at 127, 129). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Mizgala*, 61 M.J. at 127 (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965)). We evaluate "the proceeding as a whole and not mere speed." *Id.* at 129 (citation omitted).

"The remedy for an Article 10[, UCMJ,] violation [is] dismissal with prejudice of the affected charges." *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A. 1993).

## C. Analysis

### 1. Waiver or Forfeiture

The Government contends Appellant waived his claim that the Government violated his Article 10, UCMJ, right to a speedy trial "because he did not raise it prior to the adjournment of his court-martial." The Government cites the military judge's advice to Appellant that "certain motions are waived or given up if your defense counsel does not make the motion prior to entering your plea," and asserts Appellant's Article 10, UCMJ, claim was such a motion. The Government cites several cases for the proposition that an Article 10, UCMJ, motion not raised at trial is waived by an unconditional guilty plea. *See, e.g.*, *United States v. Lee*, 73 M.J. 166, 170–71 (C.A.A.F. 2014); *United States v. Tippit*, 65 M.J. 69, 75 (C.A.A.F. 2007); *United States v. Kane*, No. ACM 39590, 2020 CCA LEXIS 275, at *7 (A.F. Ct. Crim. App. 20 Aug. 2020) (unpub. op.). The Government asserts the language in the plea agreement to the effect that Appellant understood he was not waiving his right to a speedy trial merely indicated the plea agreement itself did not require him to forego such a motion; but when Appellant subsequently did not bring a speedy trial motion, agreed he was waiving all motions "which are waivable under the law," and pleaded guilty without a condition preserving his right to raise speedy trial on appeal, he did waive it.

I disagree. To begin with, as Appellant points out in his reply brief to this court, the cases the Government cites were outdated with respect to Appellant's court-martial, and the Government's argument overlooks important intervening changes to the Rules for Courts-Martial. Prior to 2019, R.C.M. 707(e) provided that an unconditional "plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense." *Manual for Courts-Martial, United States* (2016 ed.). However, the version of R.C.M. 707(e) in effect at the time of Appellant's court-martial specifically provides speedy trial motions are forfeited, not waived, by a guilty plea, unless *affirmatively* waived.

I do not find Appellant affirmatively waived his right to a speedy trial—quite the opposite was true. The Government's analysis overlooks important context for the military judge's advice that Appellant was "waiv[ing] all motions which are waivable under the law." First, the plea agreement itself indicated Appellant and the convening authority agreed Appellant was "not waiving" his right to a speedy trial, among other rights, "in accordance with R.C.M. 705(c)(1)(B)." Second, when the military judge reviewed this provision with Appellant during the providence inquiry, he reiterated that Appellant was "not waiving" these rights. Even more strikingly, he then told Appellant, "[o]bviously, it's *impermissible under the law to waive those specific rights*." Furthermore, when the military judge clarified with counsel that the plea agreement intended Appellant would "waive all other waivable motions," the military judge specifically excepted out the rights Appellant was "prohibited from waiving" pursuant to R.C.M. 705 that the military judge had previously identified to Appellant. Thus, Appellant was repeatedly and specifically advised he was *not* waiving his right to a speedy trial by proceeding with the plea agreement and guilty plea.

The majority opinion cites *Davis*, 79 M.J. at 331–32, in support of its conclusion that Appellant's failure to raise an Article 10, UCMJ, motion at trial, despite being "attuned" to the issue and knowing the plea agreement and guilty plea did not foreclose such a motion, indicates waiver. However, the issue in *Davis* was quite different. There, the trial defense counsel stated the defense had no objection or requested changes to the military judge's proposed findings instructions. The United States Court of Appeals for the Armed Forces (CAAF) held that because the defense "affirmatively declined to object to the military judge's instructions and offered no additional instructions," the appellant had "affirmatively waived any objection to the military judge's findings instructions." *Id.* at 331. Appellant's case is distinguishable in that it does not involve affirmative waiver of objections to findings instructions; but more importantly, I cannot agree with waiver where the applicable rule provides for forfeiture absent "affirmative waiver," where Appellant was repeatedly advised he was *not* waiving his speedy trial rights, and where the military judge told him "obviously" it was "*impermissible under the law*" to waive such rights. Under these

36

circumstances, although Appellant did not make a "timely assertion of his right" to seek relief for violation of his Article 10, UCMJ, speedy trial rights (signifying forfeiture), I do not find Appellant intentionally relinquished or abandoned that right (signifying waiver). *See Gladue*, 67 M.J. at 313 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

### 2. Article 10, UCMJ

Because I find Appellant forfeited rather than waived his Article 10, UCMJ, claim, I would review it for plain error. I would not find Appellant is entitled to relief. In short, I do not find the Government clearly or obviously failed to proceed with reasonable diligence in bringing Appellant to trial after he was placed in pretrial confinement. *See Robinson*, 77 M.J. at 299 (citation omitted); *Cooley*, 75 M.J. at 259 (citation omitted).

First, reviewing for clear or obvious error, I would find the length of the delay does not favor either party. In general, "[t]he length of delay is measured under Article 10[, UCMJ,] . . . from the date an accused enters pretrial confinement until the commencement of the trial on the merits." *Reyes*, 80 M.J. at 226 (citations omitted). Appellant entered pretrial confinement on 7 May 2021 and his court-martial commenced on the merits on 23 February 2022—292 days later. This is a significant delay. However, this was a relatively complex and fairly serious case, initially involving 13 different charges and 15 specifications spanning more than eight months and involving five victims. *See Cooley*, 75 M.J. at 260 (citation omitted) (explaining evaluation of the length of delay should include consideration of, *inter alia*, the seriousness of the offenses and complexity of the case).

Second, I would find the reasons for the delay strongly favor the Government. The parties appear to agree that the delay from the Government's trial ready date of 4 October 2021 until the court-martial resumed on 23 February 2022 was attributable to the Defense. In addition, part of the delay is attributable to the sanity board the Defense itself requested. Appellant faults the 34 days that elapsed from his entry into pretrial confinement and the initial preferral, but this delay was not excessive in light of the number and complexity of the charged offenses. Appellant also faults the convening authority for proceeding with the Article 32, UCMJ, preliminary hearing despite Appellant's waiver. However, R.C.M. 405(m) expressly authorized the convening authority to do so, and in light of the number and complexity of the charges it was reasonable to have a PHO thoroughly examine the case, including potential additional charges. After the PHO submitted her report, an additional charge and specification were preferred, and several charges and specifications were dismissed. On the whole, the Government exhibited reasonable diligence and steady progress in bringing Appellant to trial.

Third, Appellant did repeatedly demand speedy trial. Accordingly, this factor weighs in his favor.

Fourth, with respect to prejudice, the "mere fact of pretrial confinement" does not constitute prejudice for purposes of *Barker* factor analysis. *Cooley*, 75 M.J. at 262 (citations omitted). From 11 May 2021 through 4 October 2021, Appellant was housed in the medical section of the confinement facility due to concerns for his mental health. The record does not indicate this precaution or the conditions there were unwarranted or otherwise oppressive under the circumstances. In light of trial defense counsel's concession and the military judge's finding—in relation to the litigated Article 13, UCMJ, pretrial punishment motion described above—that trial defense counsel was not deprived of the time they needed with Appellant to prepare, reviewing for clear or obvious error, I would not find Appellant's ability to prepare a defense was materially impaired. Finally, to the extent Appellant felt particularized anxiety and concern between 7 May 2021 and 4 October 2021, housing Appellant in the medical section was a reasonable measure to address it. Reviewing for plain error, given that the reasons for the delay strongly favor the Government, and mindful not only of the *Barker* factors but the totality of the circumstances, I would not find such particularized and distinct anxiety and concern as Appellant felt demonstrated the Government failed to proceed with reasonable diligence or required the charges to be dismissed with prejudice. *See Kossman*, 38 M.J. at 262.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court